**The PEOPLE of the State of Colorado, Petitioner–Appellee, In the Interest of A.M. and C.M., Children,**

**and Concerning S.M., Respondent–Appellee,**

**and**

**G.M., Respondent–Appellant.**

**No. 88CA0487.**

Colorado Court of Appeals, Div. V.

Aug. 24, 1989.

Rehearing Denied Sept. 21, 1989.

Certiorari Denied Jan. 8, 1990.

Julee Wilets, Asst. County Atty., Aurora, and Rebecca Parker, Asst. County Atty., Littleton, for petitioner-appellee.

Jo Dell Coning, guardian ad litem.

Karen S. Johnson, Denver, for respondent-appellee.

Ruston, Boyer & Ruston, P.C., Lloyd L. Boyer, Denver, for respondent-appellant.

Opinion by Judge HUME.

The father, G.M., appeals an order and the ensuing dispositional judgment that adjudicated his daughters, A.M. and C.M., dependent and neglected. The mother, S.M., does not appeal, but has filed a brief on appeal joining the People's position. We reverse and remand.

After the parents' marriage was dissolved by a Wyoming decree in 1979, the mother continued to reside in Wyoming, and the father moved to Colorado. The divorce decree awarded custody of A.M. and C.M. to the mother, but she later al-

lowed both children to reside in Colorado with their father.

In October 1987, A.M. reported to authorities that she had been physically and sexually abused by her father, and that she previously had been sexually abused by her mother's boyfriend in Wyoming. A petition in dependency and neglect was later filed with leave of court naming the father and the mother as respondents. The petition alleged that the children were dependent and neglected because A.M. "has been abused; that said abuse consists of sexual assault or molestation of the child by respondent [father]; that the child also reports that she was sexually assaulted in her mother's home in Wyoming; [and] that the children lack proper parental care through the actions or omissions of respondents."

At an initial hearing, a district court referee advised the parents of their rights and the possible consequences if the petition should be sustained. Upon the parents' request, the referee appointed separate counsel for the father and the mother. The referee further ordered that the temporary legal custody of both children remain in the Arapahoe County Department of Social Services. Subsequently, the parents, through their respective counsel, demanded a trial by jury at the adjudicatory hearing.

However, on the date set for the adjudicatory hearing, the mother, through her counsel, informed the district court that she wished to make a "no fault" admission to the allegations of the petition. The court then advised the mother of her rights, including her right to a trial by jury, and obtained her acknowledgement that by admitting the allegations in the petition she waived those rights.

After advising the mother of the possible consequences of her admission, the court found that she waived her rights voluntarily, knowingly, and intelligently. Over the father's objection, the court allowed the amendment of the petition by the addition of language that the alleged abusive conduct and lack of parental care had occurred "through no fault of respondent mother."

Upon accepting her "no fault" admission, the court refused the father's request to cross-examine the mother and did not receive any other evidence on the issue of dependency and neglect.

Relying on *People in Interest of P.D.S.,* 669 P.2d 627 (Colo.App.1983), the court entered an order adjudicating the children dependent and neglected. At the dispositional hearing, the court entered an order adopting a treatment plan, thus making the decision final for purposes of appeal. The father now appeals the adjudicatory order and the final dispositional judgment.

## I.

The father initially contends that the adjudication must be reversed because the petition was facially defective and untimely filed. We disagree.

## A.

■ Section 19-3-206, C.R.S. (1988 Cum. Supp.) provides that in dependency and neglect proceedings, "the petitioner shall be represented by a county attorney, special county attorney, or city attorney of a city and county." Former C.R.J.P. 1, then in effect, provided that such proceedings "shall be conducted according to the Colorado Rules of Civil Procedure" when they are not governed by the C.R.J.P. or by The Colorado Children's Code. C.R.C.P. 11 requires every pleading of a party represented by counsel to be signed by an attorney of record.

Here, the verified dependency petition was signed only by a caseworker for the Arapahoe County Department of Social Services rather than by counsel who represented that department. The father contends that this formal defect rendered the petition invalid and that the court's error in denying his motion to dismiss requires reversal of the adjudication. We are not persuaded.

Section 19-3-308(4)(b), C.R.S. (1988 Cum. Supp.) requires a county department of social services to investigate all reports of child abuse and neglect and authorizes the department to "file a petition in the juve-

nile court or the district court with juvenile jurisdiction" on behalf of an abused child "if the department reasonably believes an incident of abuse ... has occurred." Moreover, § 19–3–501(1), C.R.S. (1988 Cum. Supp.) authorizes the department to inform the juvenile court of its belief that an abused child appears to be within its jurisdiction, and further provides that the court may then authorize the filing of a dependency petition after such further investigation as the court might deem necessary. Finally, § 19–3–501(2)(a), C.R.S. (1988 Cum. Supp.) provides that upon receipt of a preliminary investigation report made by the county department of social services indicating child abuse, the juvenile court shall authorize and may direct the filing of a dependency and neglect petition.

Here, a preliminary investigation was made by the county department of social services upon an abuse report made by a peace officer. The department, in turn, took A.M. into protective custody, notified the court, and arranged a timely shelter hearing before the court. At the conclusion of that hearing, and after considering the department's preliminary investigation report, the court authorized the filing of a dependency petition and ordered that A.M. remain in the protective custody of the department.

The department was in fact represented by the assistant county attorney at all proceedings before the court. Also, that attorney entered her appearance for the department on the record in open court, thus satisfying the requirements of § 19–3–206, C.R.S. (1988 Cum.Supp.). *See* former C.R. J.P. 4(a) (1984 Repl.Vol. 7B).

Thus, any error in the department's failure to follow the requirement of C.R.C.P. 11 for an attorney's signature was harmless under the circumstances appearing here, and does not require reversal.

### B.

▪ The father also contends that, because the petition was not filed within seven working days after A.M. was taken into protective custody, the court was without subject matter jurisdiction over the dependency and neglect proceedings. Again we disagree.

C.R.J.P. 7(c), as then in effect, provided that if a dependency and neglect petition "is not filed within seven working days ... after a child is taken into custody ... said child shall be released upon order of court...." *Cf.* C.R.J.P. 4, as now in effect (petition must be filed within 10 working days unless otherwise directed by the court).

Here, A.M. was taken into temporary protective custody on October 24, 1987, and the shelter hearing was held on October 26, 1987, at which time the court authorized the filing of a dependency and neglect petition. The petition was subsequently filed on November 13, 1987.

The father did not object to the continuation of the out-of-home placement order beyond the seven-day limit, nor did he request that the children be released from protective custody. After the petition was filed, he did object to the particular foster home in which the children were placed, but he did not object to their remaining in protective custody. However, he now contends that the violation of C.R.J.P. 7 deprived the court of subject matter jurisdiction.

Contrary to the father's contention, compliance with C.R.J.P. 7 is not a jurisdictional prerequisite to the commencement of juvenile proceedings. That rule provides its own remedy for its violation: release of the child from the temporary custodial order in the absence of good cause shown for a reasonable extension. The purpose of the rule is to avoid unnecessarily prolonged out-of-home custodial care for children pending the filing of a formal juvenile petition. The rule is not, however, self executing. Either an interested party must move the court for an order for a child's release from custody, or the court may, *sua sponte,* order such release.

Even if the court orders the release of a child from protective shelter or detention pending the filing of a juvenile petition, the People's right to file a petition is unaffected, and the court's jurisdiction over the

subject matter of such a late-filed petition is unimpaired. *See P.F.M. v. District Court*, 184 Colo. 393, 520 P.2d 742 (1974).

Thus, we conclude that the court did not err in denying the father's motion to dismiss the dependency and neglect petition for the People's non-compliance with C.R.J.P. 7(c).

## II.

■ The father next contends that the court erred in entering an order adjudicating the children dependent and neglected without conducting an adjudicatory hearing before a jury. We agree.

The purpose of an adjudicatory hearing is to determine whether the factual allegations in the dependency and neglect petition are supported by a preponderance of the evidence, and whether the status of the subject child or children warrants intrusive protective or corrective state intervention into the familial relationship. *See* §§ 19–3–102 and 19–3–505(1), C.R.S. (1988 Cum. Supp.); *People in Interest of O.E.P.*, 654 P.2d 312 (Colo.1982).

Section 19–3–502(5), C.R.S. (1988 Cum. Supp.) requires that the petitioner in a dependency and neglect proceeding name as a party respondent any parent alleged to have abused or neglected the child or children whose status is at issue. A respondent parent has the right to a jury determination whether disputed factual averments of a dependency petition are proved at the adjudicatory hearing. Section 19–3–202, C.R.S. (1988 Cum.Supp.).

Any respondent parent may elect to waive his or her jury right, and may confess, stipulate, or elect not to contest part or all of the allegations in a dependency petition. If the court accepts such confessions, stipulations, or admissions, then the People may be relieved from the burden of proving such admitted averments at the adjudicatory hearing. However, such an admission by one parent is not necessarily dispositive of allegations disputed by other named respondents.

Here, the mother admitted that A.M. had been assaulted in her home in Wyoming and did not contest that the children lacked proper parental care through no fault of her own. She also purported to admit that A.M. had been abused by having been sexually assaulted or molested by the father. The mother's admissions were not made under oath, and no evidence was taken by the court to substantiate them. The record contains no factual basis for the mother's purported knowledge concerning the "admitted" lack of proper parental care in the father's home, or concerning the alleged assault on A.M. by the father.

Thus, although the court did not err in accepting the mother's admissions, we conclude that those admissions, while binding upon her, were legally insufficient to sustain the petition's averments concerning the children's then existing status in the face of the father's denial.

The father, as physical custodian of the children, had denied that the children lacked proper parental care in his home or that he had assaulted or molested A.M. He also had independent rights to require that the petition's factual averments be proven by a preponderance of credible evidence before a jury, and he did nothing to forfeit or surrender those rights. Essential allegations of the petition remained in dispute after the acceptance of the mother's admission, and resolution of those issues required a proper hearing prior to the entry of an adjudicatory order. *See* § 19–3–505, C.R.S. (1988 Cum.Supp.).

The trial court's reliance on *People in Interest of P.D.S., supra*, to support the adjudicatory order, is misplaced. In that case, both parents had admitted that P.D.S. was dependent or neglected, but the mother's was a "no fault" admission. While she had admitted P.D.S.'s dependent or neglected status, she had done so pursuant to a stipulation that she was not "at fault" in causing that status. Subsequently, she objected to the court's order for her participation in a court-ordered treatment plan for P.D.S., because the child had not been adjudged dependent or neglected "as to her." Under those circumstances, we held that adjudications are not made "as to" individual parental faults, but only to deter-

mine the status of the child. Since both parents had admitted P.D.S.'s dependent and neglected status, the adjudication was sustained. We did not there decide that one respondent parent's "no fault" admission is automatically sufficient to support an adjudication of dependency or neglect in the face of the other respondent parent's denial of the allegation in the dependency petition.

To the contrary, in *People in Interest of T.R.W.*, 759 P.2d 768 (Colo.App.1988), we held that a non-custodial parent's "no fault" admission was an insufficient basis to sustain a dependency adjudication when a jury found that the petition's allegations of abuse by the custodial parent were "not sustained" by evidence presented at an adjudicatory hearing. In that case we noted that the allowance of such an adjudication would permit dependency and neglect proceedings to be used for manipulative purposes by one parent against the interests of the other to the possible detriment of the best interests of the children.

Here, both children had resided with the father for a considerable period prior to commencement of these proceedings. It was the father's alleged misconduct toward A.M. that precipitated the filing of the petition, and the present status of the children involved their alleged lack of parental care in the father's home environment.

Also, despite the mother's claim that she was the children's legal custodian, she had allowed them to reside with the father and was not directly involved in their routine care and control in his home. The mother's minimal involvement with the children's present status was underscored by the department's recommendation, and the court's adoption, of a treatment plan that essentially allowed her to "opt out" of active participation in various individual and family counseling and therapy programs. The treatment plan was designed to reintegrate the children into the father's home, and the mother's home was not considered as a placement alternative.

The father's denial of the children's alleged status and of the underlying facts alleged in support of that status was simply ignored by the court. By basing the adjudication solely upon the mother's "no fault" admission, the court effectively denied the father his day in court, deprived him of the opportunity to require the presentation of and to challenge evidence offered to sustain the petition, to confront and cross-examine the mother as to the basis for her ostensible belief as to the children's present status, and to present evidence controverting the petition's allegations. Yet, despite having been denied those fundamental rights, the father's home and his relationship with his children were made the focus of the state's intrusive intervention under the treatment plan. Under these circumstances, the adjudicatory order and the ensuing dispositional judgment cannot stand.

### III.

■ We reject the father's contention that the court lost jurisdiction over the subject matter of this action by its failure to hold an adjudicatory hearing within 90 days after the petition was filed, and by holding the dispositional hearing more than 45 days after entry of the adjudicatory order. *See People in Interest of S.B.*, 742 P.2d 935 (Colo.App.1987).

The trial court's order adjudicating A.M. and C.M. dependent and neglected and the ensuing dispositional judgment are reversed. The cause is remanded with instructions that the court conduct an adjudicatory hearing before a jury to resolve the issues framed by the allegations contained in the petition and the father's denials as provided by law.

CRISWELL and REED, JJ., concur.