In re the PEOPLE of the State of
Colorado, In the Interest of
Minor Child A.H.,

El Paso County Department of Human
Services, Petitioner

and Concerning

A.P., G.H., R.H., and G.H., Respondents.

No. 09SA22.

Supreme Court of Colorado,
En Banc.

Sept. 14, 2009.

Davide C. Migliaccio, Colorado Springs, CO, Attorney for Respondent G.H.

Office of the El Paso County Attorney, William Hobbs Louis, El Paso County Attorney, John A. Thirkell, Chief Deputy County Attorney, Colorado Springs, CO, Attorneys for the El Paso County Department of Human Services.

Susan L. Mueller, P.C., Susan L. Mueller, Colorado Springs, CO, Attorneys for Respondent A.P.

Nancy J. Walker–Johnson, Monument, CO, Guardian ad litem.

Chief Justice MULLARKEY delivered the opinion of the court.

## I. Introduction

This original proceeding pursuant to C.A.R. 21 was brought by the father of A.H., a minor child who is the subject of a dependency and neglect case pending in the El Paso County District Court. The father claims that the district court wrongfully denied him custody of A.H. after the Department of Human Services ("DHS") failed to prove at trial that he was an unfit parent and he was dismissed from the dependency and neglect case.

We issued a rule to show cause and received responses from the mother, DHS, and the child's guardian ad litem. The respondents argue that relief is not appropriate under C.A.R. 21 because the father had a remedy that he failed to exercise. Alternatively, they contend that he is not entitled to prevail on the merits.

We agree that C.A.R. 21 relief is inappropriate in this case. The father had two other remedies. First, if the father disagreed with the trial court's order, he should have appealed the order through the expedited appeals process applicable to cases for dependency and neglect adjudications established in C.A.R. 3.4. Instead, for no apparent reason, he waited until months after the deadline passed for seeking C.A.R. 3.4 relief and then filed this petition under C.A.R. 21. Although C.A.R. 21 review is available for cases that demonstrate a compelling need, absent such a need C.A.R. 21 may not serve as a substitute for an adequate appellate remedy that a party simply fails to exercise. Second, the father can intervene in the pending dependency and neglect case and seek custody in that forum. Accordingly, we discharge the rule to show cause.

## II. Facts and Procedural History

Some of the facts are undisputed. A.H. was born to mother A.P. and father G.H. while the two parents lived together. The couple was not married, and they separated shortly after their daughter was born. The father was not named on the birth certificate and did not acknowledge her as his child. During her first year, A.H. was in her mother's care. The father had little or no contact with A.H. and took no part in raising her. He was identified as A.H.'s father and ordered to pay child support as a result of a paternity action filed against him after the mother received public assistance for the care of A.H. Uncontroverted reports and testimony in the record indicate that the father never sought visitation or custody of A.H., and DHS's attempts to set up visitations with the father went unanswered. The mother testified that it was she who reinitiated contact between the father and A.H., sometime after he failed to acknowledge the child's first birthday.

Approximately two years after A.H.'s birth, DHS initiated an investigation into A.H.'s care. After an initial investigation, DHS filed a dependency and neglect petition in A.H.'s case based on allegations against the mother and independent allegations against the father. One day while the moth-

er and A.H. were visiting the father's home, DHS arrived and took custody of A.H. The father contends that he had custody of A.H. when DHS removed her. The respondents dispute his claim, and the district court ruled against the father.

The trial court found that the mother admitted to two of the allegations in DHS's petition with respect to her. The father, in contrast, exercised his right to a jury trial as to the petition's four allegations against him. The first jury held in his favor on three allegations and did not reach a verdict on the fourth. The second jury returned a verdict for the father on the last claim. DHS moved for judgment notwithstanding the verdict, but the trial court denied that motion and dismissed the dependency and neglect petition against the father.

In an order dated October 1, 2008 ("the order"), the trial court found that the mother had custody of A.H. prior to DHS's intervention, found A.H. dependent and neglected with respect to the mother based on her two admissions, and therefore retained jurisdiction over A.H. and the mother. The order adopted concurrent permanency goals to return custody to the mother pending her completion of a treatment program, and to permanently place A.H. with her paternal grandparents through guardianship or permanent custody.

In the same order, the trial court dismissed the father from the proceedings for a lack of jurisdiction due to DHS's failure to prove that A.H. was dependent and neglected with respect to the father's conduct. The court also denied the father's request that it grant him custody of A.H., finding that parental custody was contrary to A.H.'s best interests. The trial court advised the father of two methods to assert any continued interest in A.H. First, the trial court stated that, if the father wanted to request custody or visitation, he could intervene as a party to the proceedings and pursue relief through the filing of appropriate motions. In addition, both orally during the hearing and in its written order, the court stated that the order was final and appealable as to the father.

The father exercised neither of the options offered by the trial court; he did not seek custody or visitation through the trial court, and he also failed to appeal the trial court's decision by the established deadline. Instead, several months after missing the deadline to file for an appeal, he filed this petition for a writ of prohibition.

## III. Analysis

■ The father offers no explanation for his failure to appeal the order. Instead, he supports his petition with three arguments. First, he asserts that, although he did nothing for over three months after the order, the expedited appeal procedure established by C.A.R. 3.4 was not timely enough to address his challenges to the trial court's order. Second, he questions whether the order was final and appealable. Third, he argues that the trial court lacked jurisdiction to make any custody determination regarding A.H. Rejecting the father's first two arguments, we determine that C.A.R. 21 relief is inappropriate in this case. We therefore decline to address the merits of the father's jurisdictional argument.

### A. The father had an adequate remedy in C.A.R. 3.4's expedited appeal procedure.

■ C.A.R. 21 relief is limited to extraordinary circumstances where there is no other adequate remedy. *See People v. Maestas,* 199 P.3d 713, 716 (Colo.2009) ("Relief under C.A.R. 21 is appropriate when an appellate remedy would not be adequate to rectify a serious abuse of discretion."); *Pearson v. Dist. Court,* 924 P.2d 512, 515 (Colo. 1996). It may also be appropriate where the trial court acts without or in excess of jurisdiction and there is no other adequate remedy. *Halaby, McCrea, & Cross v. Hoffman,* 831 P.2d 902, 905 (Colo.1992); *People v. Gallagher,* 194 Colo. 121, 123, 570 P.2d 236, 237–38 (1977).

This court established the expedited appeal process outlined in C.A.R. 3.4 specifically to address the timeliness of appeals in dependency and neglect cases. This was part of a nationwide effort to reduce the time children spent in foster care and improve the outcome for these vulnerable chil-

dren. Several jurisdictions focused on the need to expedite appeals for child welfare cases. Laura Grzetic Eibsen & Toni J. Gray, *Dependency and Neglect Appeals Under C.A.R. 3.4*, 36 Colo. Law. 55, 55–56 (Oct. 2007) (discussing the fact that Iowa and Utah both adopted expedited appeals processes shortly before Colorado); Karen M. Ashby, *Implementing C.A.R. 3.4 to Expedite Appeals in Dependency and Neglect Cases*, 34 Colo. Law. 47, 48 n. 2 (June 2005). In 1997, the General Assembly enacted section 19–1–109(3), which created a workgroup "to consider necessary changes ... to ensure that appeals in cases concerning relinquishment, adoption, and dependency and neglect be resolved within six months after being filed. Ch. 254, sec. 7, § 19–1–109(3), 1997 Colo. Sess. Laws 1433.

Serious discussions regarding Colorado's interest in disposing of dependency and neglect appeals in a more timely fashion began in 2004, after the states of Iowa and Utah adopted expedited appeals processes in 2002 and 2004, respectively. Eibsen & Gray, *supra* at 56–57; Ashby, *supra* at 48. A symposium was held in which Iowa's procedure was discussed and, afterward, several other organizations began to discuss the issue, including the Colorado Court Improvement Committee, the Colorado Bar Association ("CBA") Juvenile Law Section, the Colorado County Child Welfare Attorneys, the Colorado County Attorneys Association, the CBA Executive Council, and finally this court. Eibsen & Gray, *supra* at 56. In 2005, this court adopted the expedited appeal process set forth in C.A.R. 3.4 to address the impact on families of appellate delay in dependency and neglect cases. C.A.R. 3.4 expedites the appellate procedure for these cases by reducing filing periods, streamlining the pleadings, and making the record more quickly and easily accessible. Eibsen & Gray, *supra* at 55–58.

The father acknowledges that the expedited appeals process provided by C.A.R. 3.4 was available to him, but argues that the C.A.R. 3.4 appeals process was not adequate in his case because it is not swift enough. However, he gives no reasoning beyond that conclusory statement. He does not, for example, identify any circumstances that would distinguish his case from any other dependency and neglect case in order to justify circumventing the established procedure. His argument is further undermined by the fact that he not only failed to meet the filing deadline of C.A.R. 3.4, he waited over three months to file his C.A.R. 21 petition and yet does not assert any unusual or extenuating circumstances. Pursuant to C.A.R. 3.4's expedited filing requirements, the father's appeal would have been fully briefed within sixty-one days of the trial court's order. C.A.R. 3.4(b), (g), and (h). This entire period, plus another month, passed before the father chose to even begin the briefing period in this appeal by filing his C.A.R. 21 petition, with no explanation for the delay. No exigency was ever asserted or demonstrated despite the claim that swiftness was of the essence.

If we were to conclude that the C.A.R. 3.4 appellate process was not timely enough in this case—which on the facts presented appears no more urgent than all other dependency and neglect petitions—we would in effect be concluding that the expedited appellate procedure is never timely enough for a dependency and neglect case. Given that C.A.R. 3.4 was specifically established as an expedited procedure for dependency and neglect cases and has had a documented effect in reducing appellate periods,[1] we conclude that it is an adequate remedy to address trial court determinations in dependency and neglect cases.

 This conclusion does not mean that C.A.R. 21 is never available in dependency and neglect adjudications. If a particular case presents a compelling need to bypass the ordinary appeal process, C.A.R. 21 review may be appropriate. However, a party must present specific facts demonstrating a compelling need. Simply asserting that a normal appeal would not be timely enough is inadequate to trigger C.A.R. 21 review. In

1. The average amount of time it takes a dependency and neglect filing to pass through the court of appeals, from the date of filing to a court of appeals mandate, has been reduced by 133 days—about four and a half months. Eibsen & Gray, *supra* at 55.

the present case, the father had an adequate remedy available but chose not to utilize it. He makes no showing of immediacy or compelling need to bypass C.A.R. 3.4's expedited appeal process. Accordingly, C.A.R. 21 relief is inappropriate in the present case.

## B. The order was final and appealable.

The father also argues that the trial court's order was not necessarily appealable under C.A.R. 3.4. However, section 19–1–109, C.R.S. (2008), specifically states that orders regarding a parent's legal relationship to a child, as well as adjudications of dependency and neglect, are final and appealable. § 19–1–109(2)(b) and (c). In addition to section 19–1–109(2), the trial court expressly stated that the order was appealable. During the hearing, while the trial court orally delivered its ruling, the father's counsel asked the judge whether the order was final at that time; the trial judge responded in the affirmative: "[a]bsolutely." The father's counsel acknowledged the answer, and then the judge immediately confirmed that this was "[a] classic appealable order." Moreover, the written order expressly stated that the judgment was final and appealable. Even if the trial judge had not explicitly told the father both orally and in writing that the order was final and appealable, the law as written by the General Assembly would have still applied and the order would have been ready for review. Accordingly, we conclude that the order was final and appealable and the father was aware, or at least should have been aware, of that fact.

## C. Alternative Remedy

Although the father missed his opportunity to appeal the final order by failing to meet the filing deadline, we note that he is not without a remedy—he may still petition the trial court for visitation or custody of A.H., as he was instructed in the order he appeals from today. Should the father petition for custody of A.H., the trial court will make a determination based on the best interests of the child, as it did in the order at issue here. If the father again disagrees with the trial court's determination, he may appeal the decision via the established appeals process.

## IV. Conclusion

We conclude that the expedited appeal procedure established in C.A.R. 3.4 adequately protects a parent's interest in a timely review of orders in dependency and neglect proceedings. We also conclude that, unless a party presents specific facts demonstrating that the expedited appeal process is inadequate in a particular case, C.A.R. 21 review is not available. Simply stating, without more, that a C.A.R. 3.4 appeal would not be timely enough does not suffice. In the present case, the father had an appropriate remedy to challenge the trial court's determinations but he neither chose to exercise his right to an expedited appeal nor offers any facts to indicate a compelling need to bypass that appeal process. Accordingly, we discharge the rule to show cause.

Justice MARTINEZ dissents, and Justice BENDER and Justice COATS join in the dissent.

Justice MARTINEZ, dissenting.

The majority refuses to intervene in this case to prevent a juvenile court from proceeding without jurisdiction after a jury determination failing to find that A.H. was dependent and neglected. The basis of the majority's refusal to intervene, that G.H. did not pursue an adequate legal remedy and can ask for custody in the pending case, misses the point. Regardless of whether G.H. failed to appeal or can request custody in the pending case, because the juvenile court is proceeding without jurisdiction, that case will now continue futilely, with the court entering orders concerning the care and control of A.H. that ultimately have no effect. Because jurisdiction can be raised at any time, when the issue is eventually revisited or reviewed—and correctly decided—those orders will be vacated and the dependency and neglect proceedings dismissed. In my view, we properly issued a rule to show cause in this case and should make that rule absolute after explaining that, in light of the jury determination failing to find by a preponderance of the evidence that A.H. was dependent and neglected, A.P.'s no-fault admission is not a proper basis for adjudication in this case.

Because A.P.'s no-fault admission is not a proper basis for adjudication, the juvenile court's continued exercise of jurisdiction over this matter is improper. Accordingly, I respectfully dissent.

Because the majority disregards the adjudicatory proceedings in the juvenile court, choosing instead to borrow liberally from representations about the facts of this case that were not determined by the juvenile court in the adjudicatory proceedings, I begin by describing the status of the proceeding in the juvenile court.

El Paso County's Department of Human Services ("DHS") initiated this dependency and neglect proceeding on behalf of A.H., filing a petition alleging violations of several provisions of section 19–3–102, C.R.S. (2008). A.P. only admitted the legal allegation that "[t]he child is homeless, without proper care, or not domiciled with his or her parent ... through no-fault of such parent," a violation of section 19–3–102(1)(e). A.P. made factual admissions of an inability to provide a safe and stable environment for A.H.[1] to support the legal, "no-fault," admission. A.P. did not admit the petition's other allegations, and those allegations were subsequently dismissed.

Unlike A.P., G.H. did not admit any of the allegations in the petition. Instead, G.H. exercised his right to a jury trial. § 19–3–202, C.R.S. (2008). At trial, the jury determined the allegations of dependency and neglect were not proven as to three of four allegations. It found G.H. had not subjected A.H. to mistreatment or abuse; A.H. did not lack proper parental care due to G.H.'s actions or omissions; and G.H. had not failed or refused to provide proper or necessary subsistence, medical care, or any other care necessary to A.H.'s health, guidance, or well-being. Because the jury was unable to reach a verdict on the fourth allegation, a second trial was held. At the second trial, the jury failed to find that A.H. was dependent and

neglected as to the fourth allegation, finding A.H. was not subjected to an injurious environment. Thus, the jury failed to find that A.H. was dependent and neglected.

After the filing of a dependency and neglect petition, but prior to adjudication, the juvenile court has jurisdiction to enter temporary orders. § 19–1–104(1)(b), C.R.S. (2008). However, jurisdiction does not continue if the allegations of dependency and neglect are not proven, and the juvenile court is without both subject matter jurisdiction and personal jurisdiction over the respondents and the minor child. *Id.*; § 19–3–403, C.R.S. (2008).

Because A.P. made a no-fault admission and two jury verdicts failed to find that A.H. was dependent and neglected in G.H.'s care, on July 17, 2008, the juvenile court questioned whether A.P.'s admission alone could support its continuing jurisdiction over this case, citing *In re T.R.W.*, 759 P.2d 768 (Colo. App.1988) (holding child was not dependent and neglected where non-custodial parent made a no-fault admission and child was found not dependent and neglected in custodial parent's care). Accordingly, it entered an order to show cause why it should not "return custody to Respondent father."

In the ensuing show cause hearing, the juvenile court reversed course. The court ruled that, because G.H. did not have "legal custody" of A.H. at the time DHS initiated this dependency and neglect proceeding, *T.R.W.* did not apply. Thus, the court concluded that because A.P. alone had "legal custody" of A.H. when DHS initiated this proceeding, A.P.'s no-fault admission was enough for it to adjudicate A.H. dependent and neglected and retain jurisdiction over the case. The court then dismissed G.H. from the proceeding. G.H. filed a petition with this court for relief pursuant to C.A.R. 21, claiming the juvenile court lacks jurisdiction

---

1. Neither the petition nor the disposition order mentions A.P.'s homelessness. The disposition order states A.P. admitted to the petition's paragraphs 1 (general information regarding the child), 2 (general information regarding the parents and other interested parties), 3(e) (the legal no-fault allegation), and 4(a) (a factual allega-

tion). Paragraph 4(a) states only "[t]hat it has been reported the Respondent, [A.P.], is unable to provide a safe and stable environment for the subject child, [A.H.], placing the welfare of the subject child at risk...." Thus, A.P. admitted only that A.H. was homeless through "no fault" of A.P.'s.

to sustain the petition, and as a result must dismiss the case.[2]

The juvenile court's distinction between the present case and *T.R.W.* is important because the court based its continuing jurisdiction over the case on distinguishing *T.R.W.* The juvenile court's analysis that *T.R.W.* is inapplicable because G.H. did not have legal custody of A.H. is incorrect. Legal custody is "the right to the care, custody, and control of a child and the duty to provide" ordinary medical care, food, clothing and shelter. § 19–1–103(73)(a), C.R.S. (2008). Parents start their legal parent-child relationship with legal custody of their children and maintain legal custody unless and until a court adjudication deprives them of this right. § 19–4–102, C.R.S. (2008); 19–1–103(73)(a). No court has deprived G.H., or A.P., of legal custody; therefore, both parents still have legal custody of A.H. and *T.R.W.* is not distinguishable on that basis.

Separate and apart from the juvenile court's focus on the "legal custody" of A.H., the juvenile court misconstrued *T.R.W.* In *T.R.W.*, the father of two minor children who had primary care and control of the children was accused of physical abuse. 759 P.2d at 769. The mother made a no-fault admission to the allegations contained in the petition for dependency and neglect. *Id.* The father made no admission, and a jury trial was held at which the jury returned a verdict finding that none of the allegations had been proven. *Id.* However, the juvenile court entered an order adjudicating the children dependent and neglected despite the jury's verdict on the basis of the mother's no-fault admission. *Id.*

On appeal, the court of appeals held that "although strict application of § 19–1–103(20)(e) [C.R.S. (1986)] would permit an adjudication of dependency and neglect on the basis of a noncustodial parent's admission that a child is not domiciled with her through no-fault of her own, to allow such an adjudication where the finder of fact has determined that the child is not dependent and neglected ... would produce an absurd re-

sult and contravene the purposes of the Children's Code." *Id.* at 771. Because the jury *found that allegations in the petition were* not supported by a preponderance of the evidence, the court of appeals reversed the trial court's adjudication of dependency and neglect. *Id.* The court of appeals has reached similar holdings in other cases. *See In re A.M.*, 786 P.2d 476 (Colo.App.1989)(a no-fault admission made by one parent, while binding upon that party, is legally insufficient to establish the allegations in a dependency and neglect proceeding in the face of the other parent's denial); *In re P.D.S.*, 669 P.2d 627, 627–28 (Colo.App.1983). (a no-fault stipulation to dependency and neglect by one parent is insufficient to support adjudication of dependency and neglect).

Accordingly, the court of appeals has consistently and repeatedly determined that a no-fault admission is insufficient to support an adjudication of dependency and neglect. In a dependency and neglect proceeding, it is the child's status that is at issue and determines whether a court has jurisdiction. *P.D.S.*, 669 P.2d at 627. Dependency and neglect adjudications do not determine whether a child is dependent and neglected "as to" each parent. *Id.* at 627–28. Instead, adjudications determine whether the child is dependent and neglected at all. *Id.* Because a child is not adjudicated dependent and neglected "as to" each parent, and instead the focus is on the status of the child, a no-fault admission alone is not sufficient to support a finding of dependency and neglect, particularly where a jury has failed to find that the child is dependent and neglected. Therefore, once a jury has failed to find dependency and neglect, notwithstanding a no-fault admission, the juvenile court has no continuing jurisdiction over the matter. *See* § 19–1–104(1)(b).

An admission to the no-fault provision is consistent with the underlying goals of section 19–3–102 and its provisions when it is properly understood as meaning a parent denies responsibility for the welfare of a child while the child is dependent and ne-

---

2. In addition, G.H. made arguments the majority addresses after ignoring the pivotal question of whether the juvenile court was without jurisdic- tion regarding the legal and physical custody of A.H.

glected in the other parent's care. Accordingly, an admission to the provision is generally used to gain dispositional authority over a parent who agrees the child is dependent and neglected, but denies knowledge or responsibility for that status because the child resides with the other parent. *T.R.W.*, 759 P.2d at 769; *A.M.*, 786 P.2d at 476–77.

A.P.'s no-fault admission cannot sustain A.H.'s adjudication. The effect of A.P.'s admission only concerned A.H.'s status while A.H. was in G.H.'s care, and a jury subsequently returned a verdict failing to find that A.H. was dependent and neglected in G.H.'s care. *See A.M.*, 786 P.2d at 479 (holding the children were not dependent and neglected where the mother made a no-fault admission and the father denied the petition's allegations); *T.R.W.*, 759 P.2d at 771; *compare People ex rel. U.S.*, 121 P.3d 326 (Colo.App.2005)(recognizing child was dependent and neglected where father admitted to several of the petition's allegations, even though child was found not dependent and neglected in mother's care). Because jury verdicts failed to find A.H. dependent and neglected in G.H.'s care, contrary to A.P.'s admission, the juvenile court lacks jurisdiction over this case.

In my view, our C.A.R. 21 review is appropriate in this case on the basis that the juvenile court is without jurisdiction, a sufficient and persuasive reason to intervene regardless of the expedited proceedings in C.A.R. 3.4 and whether G.H. failed to appeal. This court has often granted C.A.R. 21 relief when courts have acted wholly without jurisdiction or in excess of their jurisdiction. *See, e.g., People v. Juvenile Court, City and County of Denver*, 915 P.2d 1274 (Colo.1996); *Peña v. District Court of Second Judicial Dist.*, 681 P.2d 953 (Colo.1984).

Here, because a jury determined that allegations of dependency and neglect were not proven by a preponderance of the evidence, the juvenile court is wholly without jurisdiction to continue to enter orders concerning A.H. and her parents. In my view, the most important reason for this court to grant C.A.R. 21 relief is when a court acts with absolutely no jurisdiction, and especially when that court is directing the care and control of a child and the custodial rights of the parents. Absent our intervention, the juvenile court will continue to enter orders concerning the custody and care of A.H. without any jurisdiction to do so. Because lack of jurisdiction can be raised at any time, these orders will always be subject to being declared void.

For the foregoing reasons, I dissent. I am authorized to state that Justice Bender and Justice Coats join in the dissent.